844 So.2d 502 (2003)
Troy Lee LOTT, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00945-COA.
Court of Appeals of Mississippi.
April 29, 2003.
*503 Troy Lee Lott, Jr. (Pro Se), Edmund J. Phillips, Newton, attorneys for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before McMILLIN, C.J., LEE and IRVING, JJ.
LEE, J., for the court.

PROCEDURAL HISTORY
¶ 1. The appellant, Troy Lee Lott, Jr., was indicted and convicted on three counts of armed robbery and was sentenced to serve twenty-five years for Count I, ten years for Count II, to run concurrently to the sentence in Count I, and ten years for Count III to run consecutively to the sentences in Counts I and II. Lott's motion for new trial was denied, and he appeals to this Court arguing that the trial court erred in overruling his objection to admitting his confession into evidence, that his counsel was ineffective and that his requested peremptory instructions, motion for directed verdict and motion for judgment notwithstanding the verdict were improperly denied. We review these arguments and find no merit; thus, we affirm.

FACTS
¶ 2. Ed Reeves was in a shop building outside of the home of Larry Weems in Scott County the night and early morning hours of January 25 and 26, 2001. Marty Jones arrived and opened the shop door to find Lott standing inside with a double-barreled shotgun. Lott ordered Jones to get to the ground and hit him with the shotgun. Lott's three accomplices were present, as well. The aggressors kicked and beat Reeves, causing him to lose his breath. Lott asked where Weems' safe and the guns were, and when Jones responded that he did not know, Lott tied him up, took twenty-five dollars, a pocket knife and a lighter from his pocket, and then took Reeves with them to go to Weems' house. Jones remained tied up in the shop with two of Lott's accomplices holding a shotgun on him.
¶ 3. Weems was sleeping at his house, as was Deborah South. Lott and an accomplice *504 took Reeves and burst into Weems' home, with Lott forcing Reeves into the house by holding a gun to his head. Once the other two accomplices came into the house from the outbuilding, the group took Weems' collection of pistols, shotguns, rifles, a coin collection, a camcorder and cell phones, and also Reeves' money and his cell phone. Weems testified that the robbers threatened to cut his arms off and burn his house down if he did not cooperate with them, and they later set his bed on fire. Lott's girlfriend at that time, Annie Williams, testified that Lott called her prior to the robbery and told her he was on his way to rob "some old white man." Later, Lott came back and showed her some of the loot he had collected in the robbery, and she eventually told the police that Lott hid the guns and loot in the woods behind her apartment. Lott learned that the police were coming and fled the state, finally being arrested in Georgia. Lott later signed a detailed statement of confession.

DISCUSSION
I. DID THE TRIAL COURT ERR IN ADMITTING THE APPELLANT'S CONFESSION?
¶ 4. Lott argues that his confession was involuntary and the trial court erred in allowing it to be admitted.
When the voluntariness of a confession is put into question, the defendant has a due process right to a reliable determination that the confession was in fact voluntarily given. The State bears the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt. This burden is met and a prima facie case made out by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.
The defendant must offer testimony that violence, threats of violence, or offers of reward induced the confession to rebut the State's prima facie case. If the defendant does this, then the State must offer all the officers who were present when the defendant was questioned and when the confession was signed, or show why they are not present.
Cox v. State, 586 So.2d 761, 763 (Miss. 1991).
¶ 5. Lott claims that when the officers were interrogating Billy Lewis, one of his accomplices in the robbery, he saw and heard them threaten Lewis, knock him to the ground from his chair, and then lie to the court when asked if Lott's claims of harassment were true. Lott claimed that he feared he would face the same harassment if he failed to cooperate with the officers, and that is why he signed the confession even though it was not true. However, the two interrogating officers present at the time Lott signed the confession both testified that they did not threaten or coerce Lott into confessing. Accordingly, the burden of proof is met, and we find the confession was properly admitted.
II. WAS COUNSEL INEFFECTIVE, WAS THE MOTION FOR DIRECTED VERDICT AND REQUEST FOR PEREMPTORY INSTRUCTIONS IMPROPERLY DENIED, AND WAS THE JUDGMENT NOTWITHSTANDING THE VERDICT IMPROPERLY DENIED?
¶ 6. In his brief, Lott's attorney finds Lott's basis for appeal to be without merit. He directs us to Turner v. State, 818 So.2d 1186 (Miss.2001), however, and asks on appeal that Lott, personally, be given opportunity to comment or raise additional points, which Lott does in a separate pro se supplemental brief.
*505 ¶ 7. In Lott's brief under his "statement of issues," he lists thirty-four separate issues, but fails to follow up this list of issues with any argument, except on a few points. The issues Lott does address are that the trial court erred in denying him the right to hire his own counsel resulting in appointed counsel who was ineffective, that the court erred in denying his requested peremptory instructions, and that the trial court erred in denying his motion for directed verdict and motion for judgment notwithstanding the verdict.
a. Ineffective counsel
¶ 8. With Lott's allegation of ineffective counsel, we look to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires that we determine whether counsel's overall performance was deficient and whether or not the deficient performance, if any, prejudiced the defense. The burden of proof is on the defendant to prove both prongs, and the adequacy of counsel's performance as to its deficiency and prejudicial effect should be measured by a totality of the circumstances. Ratliff v. State, 752 So.2d 416(¶ 6) (Miss.Ct.App.1999). However, there is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic. Id. Lott claims that his counsel was deficient in failing to call any defense witnesses, in failing to move for a continuance to allow Lott to choose other counsel, in failing to introduce favorable evidence, in failing to present mitigating evidence during sentencing, and since he was innocent yet convicted, was deficient since the trial resulted in a conviction. In essence, Lott's contention here seems to be that because things did not go his way, his counsel did not do an adequate job. A review of the record reveals no deficiency in the performance of his attorney, who zealously cross-examined the witnesses and competently defended Lottthe law and facts simply were not on Lott's side. Therefore, we find that neither of the Strickland prongs are met, and this argument fails.
b. Direct verdict/peremptory instructions/judgment notwithstanding the verdict
¶ 9. Lott argues the denial of his motion for directed verdict and request for peremptory instructions was error, requiring reversal. He also claims that his motion for judgment notwithstanding the verdict was improperly denied as the evidence was insufficient to support the verdict. All three points concern the sufficiency of the evidence.
The standard of review for peremptory instructions and directed verdicts are the same. "In passing upon a request for a peremptory instruction, all evidence introduced by the State is to be accepted as true, together with any reasonable inferences that can be drawn from that evidence, and if sufficient evidence to support a verdict of guilty exists, the motion for a directed verdict is to be overruled."
Conners v. State, 822 So.2d 290(¶ 5) (Miss. Ct.App.2001).
After a defendant makes a motion for a JNOV, the trial court must consider all of the evidencenot just the evidence which supports the State's casein the light most favorable to the State ... if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error.
Sherrod v. State, 755 So.2d 569(¶ 8) (Miss. Ct.App.2000).
¶ 10. Two of the robbery victims testified and both identified Lott as one of *506 the robbers; Deborah South who was in the house at the time of the robbery identified Lott as one of the robbers; Lott's former girlfriend, Annie Williams, testified that Lott told her beforehand of his plans to commit the robbery and afterwards showed her some of the loot taken in the robbery; Officer Minor testified that he recovered the stolen items from the woods behind Lott's girlfriend's home; Officer McNeece testified concerning taking Lott's confession; and, Lott's written confession was entered into evidence. We find that the evidence in the case, taken in a light favorable to the State, was sufficient to support the guilty verdict; thus, the judge did not err in denying the motion for directed verdict, in denying the requested peremptory instructions and in denying the motion for judgment notwithstanding the verdict.
¶ 11. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS; COUNT II, ARMED ROBBERY AND SENTENCE OF TEN YEARS TO RUN CONCURRENTLY TO COUNT I; COUNT III, ARMED ROBBERY AND SENTENCE OF TEN YEARS TO RUN CONSECUTIVELY TO COUNTS I AND II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.