## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 98-CT-00531-SCT

*IN THE MATTER OF THE LAST WILL AND TESTAMENT OF CLARICE TEMPLE CARNEY, DECEASED: DARNELL C. ADAMS*

*v.*

*P. TEMPLE CARNEY, A. P. CARNEY, III, JOHN LACK CARNEY, JESSICA CARNEY AND DAWN CARNEY*

#### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/1998 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES T. KNIGHT |
| | C. TED SANDERSON |
| ATTORNEYS FOR APPELLEE: | IRVIN LEROY MARTIN, JR. |
| | ROBERT ALVIN WEEMS |
| | E. GREGORY SNOWDEN |
| | DEIDRA D. JONES |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 04/06/2000 |
| MOTION FOR REHEARING FILED: | 4/21/2000; denied 6/8/2000 |
| MANDATE ISSUED: | 6/15/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This case arises out of the chancellor's decision regarding the testamentary effect to be given five writings in the hand of Clarice Temple Carney, now deceased. The chancellor determined that all of the writings were testamentary in character and that the bequests contained in the earliest writing had been revoked by implication by one of the later writings. The chancellor then held that the remaining writings were capable of being construed together to constitute a complete disposition of the testatrix's entire estate. That decision resulted in her daughter, Darnell C. Adams, receiving a substantially diminished portion of the testatrix's estate than would have been the case had her theory of the instruments been upheld.

¶2. Adams filed an appeal to this Court, which assigned the case to the Court of Appeals. The Court of Appeals found no error in the chancellor's conclusions regarding the construction of the various writings and affirmed the lower court in a 10-0 decision. This Court agrees with the result reached by the Court of Appeals in affirming the chancellor's judgment in this case. However, we have granted certiorari to clarify that the proper standard of review in appeals from a chancellor's interpretation of testamentary writings is the de novo standard of review.

# FACTS

¶3. Clarice Temple Carney (hereinafter the testatrix) had four children, P. Temple Carney, A.P. Carney III, John Carney, and Darnell Carney Adams. John Carney predeceased his mother and left a widow, Dawn Carney and two children, Jessica Carney and John Lack Carney. The testatrix, in 1978, wrote, dated, and signed a writing appointing her daughter, Darnell Adams, as her attorney in fact in the event she became incapacitated. The writing also bequeathed to Adams all of her personal property, specifically certain pieces of jewelry, the items in her safety deposit box, and the contents of two bank accounts totaling $18,000. On June 29, 1992, the testatrix wrote another document conveying her homestead and its contents, less any jewelry found therein, to Dawn Carney, the widow of her deceased son. She devised a piece of commercial real property, "Mississippi Industries for the Blind," to her son A.P. Carney, III. The writing then contained an itemization of various accounts and her income from a mortgage holding and her interest in the A.P. Carney, Sr. Estate. After that listing, there was an entry indicating that "[n]o court or lawyers are needed" and stating:

> The remainder of this estate is to be divided into three parts: To John Carney, my son, deceased, to his heirs Jessica and John Lack Carney. This is to be held in trust for them until they are thirty-five years old. They shall receive interest.
>
> To Pomp Temple Carney, A. P. Carney III to share alike including jewelry and other items and car.

¶4. On January 27, 1994, the testatrix wrote another document similar to the 1992 writing, directing that her home and its contents, and the Mississippi Industries for the Blind property be sold, with the revenues to be divided among P. Temple Carney, A.P. Carney, III, and John Carney's two children, with John Carney's two children dividing his share equally. Like the 1992 writing, the 1994 document then contained the list of assets and a statement indicating the textatrix's view that no lawyers or legal proceedings were necessary. That is where the 1994 writing ends.

¶5. On December 27, 1994, the testatrix lined through the language in the 1992 writing devising the Mississippi Industries for the Blind property to A.P. Carney III, writing "void" near the paragraph. On April 3, 1995, the testatrix made the following entry on the same paper containing the 1992 writing:

> I appoint my son P. Temple Carney to see that this will is properly executed I name P. Temple Carney as executor of the estate. Anyone of these heirs who cares to hire a lawyer to see that this will is executed forfeits his inheritance.

Additionally, on April 3, 1995, the testatrix wrote, dated, and signed a separate writing that said, "I leave my daughter Darnell the sum of $10,000, and the church ring I wear on my left hand."

¶6. The chancellor found all of the documents to be valid holographic, testamentary instruments, an issue which the parties do not dispute. She further found that the 1992 writing, being a comprehensive testamentary instrument substantially in conflict with the 1978 instrument, had the effect of revoking the earlier writing by necessary implication. The chancellor then determined that the 1994 writing was not intended to impliedly revoke the 1992 writing, due to the 1994 writing's silence as to the disposition of substantial personal property. Instead, the chancellor found that the 1994 writing, as well as the separate 1995 writings, were valid codicils to the 1992 writing. The result of the chancellor's findings was that Darnell Adams only received the sum of $10,000 and the church ring bequeathed in the April 3, 1995,

writing.

¶7. Darnell Adams filed her appeal from the chancellor's judgment, and this Court assigned the case to the Court of Appeals. The Court of Appeals affirmed the chancellor's judgment in a 10-0 decision on June 8, 1999, and denied her motion for rehearing on September 28, 1999. This Court granted Adams's Petition for Writ of Certiorari on January 6, 2000.

## ANALYSIS

¶8. In her Petition for Writ of Certiorari, Adams asserted that the decision of the Court of Appeals is in conflict with prior opinions of this Court, because the Court of Appeals applied the "manifest error" and "abuse of discretion" standards in reviewing the lower court's judgment. We have declared that when reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review. *In re Estate of Homburg*, 697 So. 2d 1154, 1157 (Miss. 1997).

> This Court has a clear standard of review in an appeal where there are legal question [sic] from a will contest. Typically this Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong and not supported by substantial, credible evidence. . . . This rule does not apply to questions of law. When presented with a question of law, the manifest error/substantial evidence rule has no application and we conduct a de novo review.

*Id*. *See also In re Estate of Baker*, No. 1998-CA-01164-SCT, 1999 WL 628344, ¶5 (Miss. Aug. 19, 1999); *In re Estate of Bodman*, 674 So. 2d 1245, 1248 (Miss. 1996); *In re Estate of Mason*, 616 So. 2d 322, 327 (Miss. 1993).

¶9. Here, the Court of Appeals used language in its opinion stating that it did "not find manifest error in the chancellor's conclusions regarding the construction of the various writings. . ." Court of Appeals Opinion at ¶3. The Court of Appeals again used the "manifest error" language at ¶¶20 and 26. In ¶¶18 and 19, the Court of Appeals used language indicating that it applied the "abuse of discretion" standard of review. Adams's position is that the Court of Appeals applied an improper standard of review and that this Court should review the chancellor's judgment, applying the correct de novo standard of review.

¶10. The respondents, P. Temple Carney et al., agree that the proper standard of review in this case is a de novo review. However, they maintain that the Court of Appeals concluded that the chancellor was right, not merely that she did not abuse her discretion or was not manifestly wrong. They assert that the "manifest error" and "abuse of discretion" language in the Court of Appeals opinion is merely surplusage and that the opinion read as a whole is in fact a de novo review of the chancellor's judgment which the Court of Appeals affirmed because it was convinced that she was right. They point to phrases in the Court of Appeals opinion supporting their position. At ¶15, the Court of Appeals began its review of the trial court's judgment by stating, "[W]e will now consider the specific issues raised by Adams in her appeal, keeping in mind that the ultimate aim of such an endeavor is not to make an equitable distribution of the decedent's estate, but is, insofar as possible, to determine the intention of the testator." This language indicates that the intent of the Court of Appeals was to embark upon a de novo review of the legal effect of the testatrix's testamentary writings. The Court of Appeals used language in ¶24 stating that "we do not find it [the course taken by the chancellor] to be in error."

¶11. Most significantly, in addressing the testatrix's intent by writing the word "void" on the 1992 writing, the Court of Appeals stated:

> The chancellor observed that the word "void" in every case was in close physical proximity to the obliterated paragraph and she concluded that the words "void" were meant to relate to that marked-through paragraph only and not to the entire instrument. Our inspection of the document persuades us of the same thing. That fact combined with the consideration that the testatrix carefully preserved the 1992 document in her personal effects, even after she scratched through the devise relating to one particular parcel of real property, leads us to the conclusion that the chancellor's reasoning on this issue has merit. Therefore, we find no error in her determination that the words "void" referred only to the scratched-through paragraph devising the Mississippi Industries for the Blind property to A.P. Carney and not to the entire document.

Court of Appeals Opinion at ¶25 (emphasis added). Similarly, throughout the entire opinion, the Court of Appeals conducted what appears to be a de novo review, independently examining the testamentary documents and their legal effect. However, the concluding sentences in the opinion misstated the appropriate standard of review, employing the "manifest error" and "abuse of discretion" phrases.

¶12. We find that the result reached by the chancellor and the Court of Appeals is correct. However, we wish to make clear that the proper standard for reviewing a chancellor's application of the rules of construction in wills and estates cases is the *de novo* review applicable to all questions of law decided in chancery court. To the extent that any other opinions of this Court or the Court of Appeals indicate otherwise, we clarify that the proper standard of review in these cases is de novo. The judgment of the Court of Appeals is affirmed.

¶13. **AFFIRMED.**

**PITTMAN AND BANKS, P.JJ., McRAE, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., SMITH AND DIAZ, JJ., NOT PARTICIPATING.**