584 So.2d 419 (1991)
In the MATTER OF the ESTATE of H. Howard DEDEAUX, Deceased.
Gary DEDEAUX, Mike Dedeaux, Vaughn Dedeaux, Laveda Camp and Ruth Dedeaux Oswalt
v.
Kay Dedeaux.
No. 90-CA-0216.
Supreme Court of Mississippi.
July 31, 1991.
Hunter M. Gholson, Aubrey E. Nichols, Gholson Hicks & Nichols; Columbus, for appellant.
Thomas B. Storey, Jr., A.M. Edwards, Edwards Storey Marshall & Helveston, West Point, for appellee.
Before HAWKINS, P.J., and PITTMAN and McRAE, JJ.
HAWKINS, Presiding Justice, for the Court:
Michael, Gary and Vaughn Dedeaux, the sons of H. Howard Dedeaux, joined by their mother, Mrs. Ruth Dedeaux Oswalt and Laveda Camp, have appealed the decree of the chancery court of Clay County construing a holographic will of Dedeaux's to leave his entire estate to Kay Dedeaux, the stepmother of the sons. We find the chancellor followed well-settled principles in construing the will and affirm.

FACTS
Dedeaux, a chiropractor in West Point and father of three grown sons, Michael, Gary and Vaughn, married Kay Dedeaux on October 23, 1983. Dedeaux and his first wife, the mother of the sons, were divorced. Dedeaux had a combination secretary/receptionist/office manager named Laveda Camp, with whom he had a very *420 good relationship. Dedeaux also enjoyed a good family relationship with his three sons. He had owned an interest in their businesses at one time or another, and they owned some West Point realty as tenants in common.
On July 3, 1984, Dedeaux prepared a holographic will. He died on September 21, 1989.
Upon the petition of Kay Dedeaux, the will was admitted to probate. She then filed a petition to construe the will, naming as defendants the three sons. They in turn filed an answer and counterclaim (later joined by their mother and Laveda Camp) asking the court to set aside the will because of being "contrary, inconsistent and inexplicable," and if not, to construe its provisions so that the items of personalty and realty therein would go to the sons.
A photostated copy of the instrument is attached as an appendix. It reads as follows:
7/3/84
Last Will & Testament of H. Howard Dedeaux
It is my desire that if I should preceed [sic] my wife Kay in death that all of my earthly possessions be received by her.
Should she preceed [sic] me in death; or should we die together; or at her death I would like to leave the following possessions as listed:
Kay's house on Eshman be left to her son, Michael and daughter, Beth. The sum of $10,000 be left to Beth & Michael ($5,000 each). The second car, at this writing a 1981 Honda Accord be left to Beth and Michael equally. All of Kay's personal possessions be left to her children and divided equally, including her furniture, jewelry, clothes; etc.
All of my gold, silver, stock, cash, personal possessions including clothes, furniture, etc. be divided equally between my 3 sons, Michael, Vaughn & Gary. At this writing 3 bank boxes are ours, Bank of Miss. W.P., First National Bank, W.P. My car, golf cart & all other things to be divided equally between my sons. The one exception is that should my first wife, Ruth desire any of these above possessions, she may have any or all of them.
My clinic building and property is to go to my son Vaughn, however as long as she wishes Laveda Camp will rent it at a fair amount set my [sic] her to another person, preferably a chiropractor so that she may work for him  all inside equipment and the practice shall go to my secretary, Laveda Camp. My wishes is [sic] that she secure a chiropractor to run the practice. She be his CA and she get above a C.A.'s salary (about 20% of gross income) and she set the amount of rent Vaughn is to receive from the D.C.  at this writing about $700.00/month.
Laveda Camp is to be the executor of my estate and shall receive the sum of $5,000.00 from my estate. This is to be only should Kay not be living at my death or at Kay's death. My half of the airplane is to go to my son, Gary. My portion of the boat is to go to my son, Mike. All of my rental property, which includes Briarwood and the Miller Ave. apartments are to [sic] left to my 3 sons equally I would suggest forming a partnership for the purpose of owning and maintaining them.
At my death it is my desire to be cremated and my ashes be flown to about 8000 feet above ground and strewn to the wind. I would prefer the pilot be either Gary or a friend of mine. This may be over any wooded area.
Being of sane mind, I would appreciate the above being followed.
 s/H. Howard Dedeaux
 7/3/84
 Witness s/Laveda Camp
Following hearing, the chancellor found the instrument to be the genuine will of Dedeaux's, and that by its terms it left all his property in fee simple to his widow Kay Dedeaux. He further decreed Kay Dedeaux "is now the owner of assets owned by H. Howard Dedeaux, deceased, whether the same be real, personal or mixed."
The sons have appealed.

*421 LAW
Upon appeal there is no claim of error in the chancellor's holding that the instrument admitted to probate was in truth and in fact the will of Dedeaux's.
The appellants do claim that the document was so ambiguous that it should be set aside, citing two Kentucky cases, Whitehead v. Donnelly, 368 S.W.2d 337 (Ky. Ct. App. 1963), and Smith v. White, 378 S.W.2d 622 (1964). We find no merit to this assignment.
The remaining assignments are all focused on the single contention that the will was erroneously construed.
It was not the function of the chancellor nor is it of this Court to determine a just and fair disposition of Dr. Dedeaux's estate, but instead to respect his intent. Yeates v. Box, 198 Miss. 602, 609, 22 So.2d 411, 413 (1945), Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978), Matter of Estate of Vick, 557 So.2d 760, 765 (Miss. 1989). And in determining his intent in this case, we are restricted to the four corners of the will itself. Rice v. McMullen, 207 Miss. 706, 731, 43 So.2d 195, 202 (1949); Lanham v. Howell, 210 Miss. 383, 386, 49 So.2d 701, 702, cert. denied, Lanham v. Howell, 342 U.S. 834, 72 S.Ct. 57, 96 L.Ed. 631 (1951).
The first paragraph of the document headed "Last Will and Testament of H. Howard Dedeaux" reads as follows:
It is my desire that if I should preceed [sic] my wife Kay in death that all of my earthly possessions be received by her.
There can be but little doubt that if this is all the instrument stated, his widow Kay would have been deemed the sole legatee and devisee under his will, and would have taken all.
When Dr. Dedeaux wrote "all of my earthly possessions" we cannot avoid concluding he meant everything he owned. Others might write it differently yet with no clearer meaning. And just as clear is that by "received" Dr. Dedeaux meant for Kay to get "all my earthly possessions." Kay and no one else was to be the recipient of all his property. Moreover, that Dr. Dedeaux meant "received" to connote more than mere naked possession is shown by his just having used the word "possessions" in the sense of whatever he owned, not simply possessed. In interpreting this ordinary language, there is nothing to suggest but that Dr. Dedeaux meant for all he owned ("possessions") be owned ("received") by his widow. Unless there is some clearly defined exception, the ordinary layman thinks of "possessions" as being what is owned. See, Webster's Third International Dictionary, "Possessions: the aggregate of things owned." Brand v. Faries, 20 Del. Ch. 401, 178 A. 583 (1935). Moreover, from the remainder of the will, it is clear that Dr. Dedeaux equated "possessions" and "receive" with ownership.
In giving legal effect to an instrument prepared by a layman, a court should endeavor to ascertain what the words contained in it meant to the author, not simply what they could connote to a lawyer. Unless instructed in legal niceties, by the ordinary words "possessions" and "receive" with no further qualification or restriction, Dr. Dedeaux must surely have meant for Mrs. Kay Dedeaux to receive and own everything he possessed and owned.
The remaining part of the will has the following preface:
Should she preceed [sic] me in death; or should we die together; or at her death I would like to leave the following possessions as listed:
We gather no intent from this preface to diminish the estate and ownership he left Mrs. Dedeaux by the first paragraph. The first two clauses make clear that what is to follow is only to occur in event Kay either precedes him in death or they die at the same time. The clause "or at her death I would like to leave the following possessions as listed," at most is precatory.
The appellants' primary argument is that, considering the remaining portions, the will at most gave Mrs. Dedeaux a life estate.
In reaching his decision, the chancellor relied upon Cockrell v. Jones, 275 So.2d *422 105 (Miss. 1973), a case in which a daughter appealed a construction of her father's joint will as leaving the stepmother the estate in fee simple. We quote from that decision:
The two items of the will in question were:
"Item II. The survivor shall take, under this will, all of the estate and all of the property of which the one who dies first is seized and possessed and may be entitled at the time of such death, of whatsoever kind and nature and wheresoever it may be situated, be it real, personal or mixed, absolutely and forever.

"Item III. At the death of the survivor, the remainder of our estates shall go to our daughter, Hattie B. Winston Cockrell, absolutely and forever." (Emphasis in original)
These items were contained in what was prepared as a joint last will for Willie and Estella but which was signed only by Willie A. Winston.
... .
... we are of the opinion that the Chancellor correctly construed Item II of the Last Will and Testament of Willie A. Winston as devising an absolute fee simple title to Estella Jones Winston.
We find this language in Harvey v. Johnson, 111 Miss. 566, 71 So. 824 (1916):
"Where an interest or estate is given in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon the meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words giving the interest or estate." 111 Miss. at 573, 71 So. at 826.
In Raworth's Estate, 211 Miss. 780, 52 So.2d 661 (1951), this Court was confronted with a similar question and, in finding that Hazel Crampton was vested with fee simple title, again mentioned four cardinal rules of construction:
"The sole question presented is whether Hazel Smedes Crampton is entitled to the estate in fee or only to a life estate in the property with remainder over to Thomas M. Smedes.
"In undertaking to construe the will of the testatrix, there are certain rules of construction long recognized in this and other jurisdictions which should be borne in mind.
"First, the prime inquiry is the intention of the testatrix... .
"Second, the law favors the vesting of the estates at the earliest possible moment... .
"Third, in the absence of a clear intent to the contrary, that construction should be adopted which will result in a just and reasonable disposition of the property... .
"Fourth, life tenancies are not favored." 211 Miss. at 785, 52 So.2d at 662-663.
We are of the opinion that under the authority of Harvey and Raworth the Chancellor correctly construed Item II of the Last Will and Testament of Willie A. Winston as vesting the absolute fee simple title to all of his property in his wife, Estella Jones Winston.
275 So.2d at 105-107.
The appellants tell us Cockrell is distinguishable because in that case it was clear by Item II, the first paragraph, that the testator intended to devise absolute ownership in fee simple. The will in Cockrell was obviously drafted by an attorney, in this case by a layman. As above noted, we find that Dr. Dedeaux in the first paragraph clearly intended absolute ownership, although in lay language, and it is this Court's obligation to honor his intent. Paine v. Sanders, 242 Miss. 392, 401, 135 So.2d 188, 192 (1961):
... if what the testator has said leaves little doubt in the minds of persons of ordinary experience and intelligence as to what he meant, the intention of the testator is not to be defeated merely because apt legal words were not used and the language is ungrammatical and clumsy or because words which are clearly implied have been omitted.
*423 Nor do we find Brown v. Franklin, 157 Miss. 38, 127 So. 561 (1930), persuasive. The testator, Franklin, had the following two paragraphs of his will:
I give and bequeath to Miss Mattie Lou Brown all my property both real and personal. Miss Brown is now a citizen of Columbus, Mississippi.
Miss Brown is to enjoy the income from all my property until her death. In that event all the property will be given to my great nephew Malcolm A. Franklin, son of Cornell S. Franklin.
Brown, 157 Miss. at 42, 127 So. at 561. The distinction between Brown and this case is that in Brown, while this Court recognized that the first paragraph standing alone would have given Miss Brown absolute ownership, we further noted, "the next sentence of the will proceeds to expressly define and limit the estate to be left to her." Brown, 157 Miss. at 46, 127 So. at 563. No such unequivocal limitation appears in Dr. Dedeaux's will. Instead, the paragraph following the devise to Mrs. Dedeaux envisions contingencies under which Mrs. Dedeaux could not take under the will in any event, because she would be dead.
That the clause "or at her death I would like to leave the following possessions as listed," is precatory is demonstrated by the fact that the will immediately following addresses property owned by Mrs. Dedeaux: "Kay's house on Eshman be left to her son... ." etc.
In Wheeler v. Williams, 235 Miss. 142, 146, 108 So.2d 578, 579 (1959), the will stated:
Second, I hereby give and bequeath unto my beloved wife, Frankie Williams, all my property, real, personal and mixed of every nature kind and description... . It is my will and desire that my daughter, Lillie Williams, receive all property, personal and real, that her mother, Frankie Williams, have or possessed with her at death.
We held:
We think that the second sentence of Item 2 of the will is merely precatory, since it advises his wife of his desire with respect to the ultimate disposition of her property. The expression of this desire is not limited to the property that the testator devised to his wife but purports to include all property that the mother have or be possessed with at the time of her death.
Wheeler, 235 Miss. at 156, 108 So.2d at 581.
Of course, no one can ever know with absolute certainty what Dr. Dedeaux meant because he cannot now instruct us. The Court can be confident that having carefully studied Dr. Dedeaux's will, we cannot hold the chancellor was manifestly wrong, In re Powell's Will, 239 Miss. 10, 17, 121 So.2d 1, 3 (1960), and under our appellate scope of review, we must therefore affirm.
The decree of the chancery court adjudicating that Mrs. Kay Dedeaux was the sole devisee and legatee under Dr. Dedeaux's will is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
PRATHER, J., not participating.
*424 
*425